ELECTRONIC CITATION:  16 FED App.0001P (6th Cir.)
File Name:  2016b0001p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re:   JONATHAN B. JONES, | ) |
| | ) |
| Debtor. | ) |
| ———————————————— | ) |
| | ) |
| DEAN S. HOOVER, | ) |
| | ) |
| Appellant, | )    No. 14-8006 |
| | ) |
| RYAN HARGER; JENNIFER HARGER, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| JONATHAN B. JONES, | ) |
| | ) |
| Defendant-Appellee. | ) |
| ———————————————— | ) |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio
Case No. 12-51440; Adv. No. 12-5238

Argued: May 11, 2015

Decided and Filed: March 3, 2016

Before: HARRISON, HUMPHREY and PRESTON, Bankruptcy Appellate Panel Judges.

———————————————

**COUNSEL**

**ARGUED:** Scott H. Scharf, SCOTT H. SCHARF CO., LPA, Beachwood, Ohio, for Appellant. **ON BRIEF:** Scott H. Scharf, SCOTT H. SCHARF CO., LPA, Beachwood, Ohio, for Appellant.  Karen H. Brouse, BROUSE LAW OFFICE, Fort Myers, Florida, for Appellee.

---

## OPINION

---

**C. KATHRYN PRESTON**, Chief Bankruptcy Appellate Panel Judge. An attorney who was sanctioned pursuant to Federal Rule of Bankruptcy Procedure 9011 ("Rule 9011") filed an appeal asserting error by the bankruptcy court when it awarded opposing counsel attorneys' fees pursuant to Rule 9011(c)(2). Additionally, the attorney argued that the bankruptcy court abused its discretion by levying sanctions based on clearly erroneous factual findings. For the reasons stated below, the Panel holds that the bankruptcy court erred as a matter of law in awarding attorney fees as sanctions on a *sua sponte* basis and abused its discretion in imposing any sanctions.

## I. ISSUES ON APPEAL

Appellant Dean S. Hoover ("Hoover") raised many issues on appeal. The Panel has determined that there are two dispositive issues:

1. Did the bankruptcy court's sanctions order violate Rule 9011(c)(2) because it awarded attorneys' fees on the bankruptcy court's own initiative?

2. Did the bankruptcy court abuse its discretion in awarding sanctions under Rule 9011 by relying on clearly erroneous factual findings?

The Panel declines to address the other issues raised by Hoover as unnecessary based on the disposition of this appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

Under 28 U.S.C. § 158(a)(1), this Panel has jurisdiction to hear appeals "from final judgments, orders, and decrees" issued by the bankruptcy court. For purposes of appeal, an order

is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citation and quotation marks omitted). "The concept of finality in the bankruptcy context, however, should be viewed functionally, with appellate courts enforcing this threshold requirement in a more pragmatic and less technical way in bankruptcy cases than in other situations." *In re Thomas*, 511 B.R. 89, 91 (B.A.P. 6th Cir. 2014) (quoting *Simon v. Lis* (*In re Graves*), 483 B.R. 113, 115 (E.D. Mich. 2012) (internal quotation marks and citations omitted)). *See also In re Cyberco Holdings, Inc.*, 734 F.3d 432, 437 (6th Cir. 2013). The Sixth Circuit allows appeals from "an order in a bankruptcy case [that] finally disposes of discrete disputes within the larger case." *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers* (*In re Dow Corning Corp.*), 86 F.3d 482, 488 (6th Cir.1996) (internal quotation marks, alteration, and citation omitted). "An order imposing Rule 9011 sanctions is only final upon assessment of fees and expenses." *In re Wingerter*, 394 B.R. 859, 862 (B.A.P. 6th Cir. 2008) *rev'd on other grounds*, 594 F.3d 931 (6th Cir. 2010) (citations omitted).

Hoover's notice of appeal includes the following orders: (1) Order Dismissing Complaint and Counterclaim and Setting Show Cause Hearing Re: Rule 9011 ("Order to Show Cause"), Adv. Case ECF No. 17, Jan. 29, 2013; (2) Order Setting [Evidentiary] Hearing Re: Rule 9011 ("Second Order to Show Cause")[1], Adv. Case ECF No. 24, Feb. 13, 2013; (3) Order Setting Deadline for Evidentiary Hearing ("Order Adjourning Hearing"), Adv. Case ECF No. 27, March 8, 2013; and (4) Order Re: Rule 9011 ("Sanctions Order"), Adv. Case ECF No. 33, Jan. 6, 2014. The Sanctions Order is a final order. Accordingly, Hoover's arguments regarding the three interlocutory orders issued prior to the Sanctions Order are ripe for review.

> We review the bankruptcy court's imposition of sanctions using the abuse-of-discretion standard. *Corzin v. Fordu* (*In re Fordu*), 201 F.3d 693, 711 (6th Cir.1999). An abuse of discretion occurs where the reviewing court has "a definite and firm conviction that the court below committed a clear error of judgment."

---

[1]  The Order to Show Cause and Second Order to Show Cause are referred to collectively as the "Orders to Show Cause."

> *Barlow v. M.J. Waterman & Assocs., Inc.* (*In re M.J. Waterman & Assocs., Inc.*), 227 F.3d 604, 607-08 (6th Cir. 2000) (citation, alterations, and internal quotation marks omitted). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Id.* at 608.

*B-Line, LLC. v. Wingerter* (*In re Wingerter*), 594 F.3d 931, 936 (6th Cir. 2010).

> "An abuse of discretion is defined as a definite and firm conviction that the [court below] committed a clear error of judgment." *Mayor of Baltimore v. W. Va.* (*In re Eagle Picher Indus., Inc.*), 285 F.3d 522, 529 (6th Cir. 2002) (internal quotation marks and citation omitted). The abuse of discretion must be more than harmless error to provide cause for reversal. *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 897 (6th Cir. 2004) (citations omitted). Sanctions based upon an erroneous view of the law or an erroneous assessment of the evidence is necessarily an abuse of discretion. *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 405, 110 S. Ct. 2447, 2461 (1990); *Sakil v. Mount Sterling Tp. Police Dept.*, 458 F.3d 520, 527-528 (6th Cir. 2006). *See also Parrott v. Corley*, 266 F. App'x 412, 415 n. 1 (6th Cir. 2008) (arguments concerning an error in statutory interpretation or due process related to sanctions are reviewed de novo).

*In re Royal Manor Mgmt., Inc.*, 525 B.R. 338, 346 (B.A.P. 6th Cir. 2015).

## III. FACTS

### A. Procedural History

Hoover represented Plaintiffs, Ryan and Jennifer Harger (collectively "the Hargers"), in a state court action against Jonathan B. Jones ("Jones")[2] for intentional infliction of emotional distress, civil conspiracy, and malicious prosecution. After Jones filed a bankruptcy petition, Hoover sought relief from the automatic stay to continue the proceedings in state court. Hoover also filed an adversary proceeding pursuant to 11 U.S.C. §§ 727(a)(3), 727(a)(4)(A), and 523(a)(6), seeking denial of Jones' discharge and a determination that the Hargers were owed a non-dischargeable debt arising

---

[2] Jones is sometimes referred to as "Debtor" in quotations taken from the record.

-4-

from the same facts as the state court proceeding. In the adversary proceeding, Jones filed a counter-claim which alleged abuse of process with the purpose of harassment.

Ultimately, the Hargers withdrew their motion for relief from the automatic stay and filed a motion to dismiss the adversary proceeding. The bankruptcy court granted the motion to dismiss the complaint and contemporaneously determined that it did not have jurisdiction over the counter-claim. However, in the order dismissing the complaint and counterclaim, the bankruptcy court *sua sponte* entered the Order to Show Cause why the bankruptcy court should not find that the Hargers and their counsel violated Rule 9011(b) by filing the complaint and prosecuting the adversary proceeding and by seeking relief from the automatic stay in order to pursue matters in state court.

Prior to the hearing, counsel on both sides filed briefs and supplemental affidavits. On February 6, 2013, the bankruptcy court held a hearing on the Order to Show Cause. At this hearing, Hoover requested and the bankruptcy court agreed to limit any sanctions to Hoover directly and not to sanction the Hargers. The bankruptcy court issued the Second Order to Show Cause following the February 6, 2013 hearing. On March 8, 2013, the bankruptcy court entered the Order Adjourning Hearing to March 15, 2013, to consider whether Hoover had further violated Rule 9011 in response to the Order to Show Cause. The Order Adjourning Hearing also required Hoover to submit his direct testimony by affidavit. The bankruptcy court conducted an evidentiary hearing on March 15, 2013, and May 9, 2013. On January 7, 2014, the bankruptcy court entered an order (the "Sanctions Order") which found that Hoover had repeatedly violated Rule 9011, directed him to pay over $26,000 in attorneys' fees to Jones' attorney, and revoked Hoover's electronic bankruptcy filing authority, commonly referred to as "CM/ECF privileges." The bankruptcy court also referred the matter to both the District Court and the United States Attorney for consideration of whether Hoover's conduct should be criminally prosecuted. Hoover timely filed this appeal.

## B. Background Facts

The Hargers were Jones' next door neighbors. Police reports indicate that there had been issues between the neighbors dating back five or six years prior to the filing of the bankruptcy petition. Both sides filed police reports alleging incidents of harassment by the other side.

Central to the underlying adversary proceeding is an incident involving a third party, Jonathan Grad ("Grad"). At the time of the incident, Grad was an employee of CarMeds. CarMeds was a limited liability company ostensibly owned by Jones' mother and run by Jones. Grad worked directly with Jones, occasionally meeting at Jones' home for business purposes. Grad claimed to have been assaulted by an unknown individual, after a meeting at Jones' home. At the police station, Grad identified Ryan Harger from a photo line-up as the assailant. Ryan Harger was arrested in relation to the incident (the "State Criminal Case"). Ultimately, the charges were dropped without prejudice. The Hargers filed a civil action against Grad and Jones asserting that they conspired to have Ryan Harger falsely arrested (the "State Court Action").

During the litigation, Jones filed a petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101, et seq. The State Court Action was automatically stayed upon the filing. Hoover, as the Hargers' attorney, filed a Motion to Modify Automatic Stay ("Motion for Relief")[3] in order to pursue the State Court Action. Bankr. Case ECF No. 16, July 10, 2012. Hoover also filed a complaint in the bankruptcy court ("Adversary Complaint") seeking: (1) a determination that the debt owed by Jones is non-dischargeable based on the same facts as the State Court Action, and (2) denial of Jones' discharge based on the assertion that Jones lied about the ownership of CarMeds. However, the Hargers ultimately withdrew the Motion for Relief and filed a motion to dismiss the adversary proceeding prior to any rulings from the bankruptcy court.

---

[3] The Sanctions Order also refers to this motion as the "Motion for Relief."

The bankruptcy court dismissed the adversary proceeding on the Hargers' motion, and the counter-claim on jurisdictional grounds. In the order dismissing the adversary proceeding, the bankruptcy court set a hearing *sua sponte*, directing the Hargers and Hoover, as their attorney, to show that they had reasonable grounds to file the Motion for Relief and the Adversary Complaint. Order to Show Cause, Adv. Case ECF No. 17, Jan. 29, 2013. In a response to the Order to Show Cause, Hoover made several factual assertions that Jones' counsel, Karen Brouse ("Brouse"), vehemently contested. Brouse obtained affidavits from Noah Munyer ("Munyer"), Grad's attorney in the State Court Action and Christopher Parker ("Parker"), the prosecuting attorney in the State Criminal Case, which accused Hoover of misrepresenting facts in his filings in the bankruptcy court.

The bankruptcy court found that Hoover violated Rule 9011 by bringing the Motion for Relief and filing the Adversary Complaint without specific evidence. Additionally, the bankruptcy court found that Hoover made knowing and intentional misrepresentations in his filings regarding certain facts.

## IV. DISCUSSION

### A. Attorneys' Fees Under Federal Rule of Bankruptcy Procedure 9011(c)(2)

Rule 9011(c)(2) only allows a court to award attorneys' fees as a sanction when a motion is brought by opposing counsel, and there is no such authority when an order to show cause is issued by the court *sua sponte*. Rule 9011(c)(2) states, in part:

> (2) Nature of Sanction; Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, *if imposed on motion* and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Fed. R. Bankr. P. 9011(c)(2) (emphasis added). *See also In re Opra*, 365 B.R. 728, 741 (Bankr. E.D. Mich. 2007) ("Because this Rule 9011 matter was initiated by the Court rather than by a motion filed by a party, the only available sanctions expressly authorized by Rule 9011(c)(2) are (1) nonmonetary 'directives;' and (2) a 'penalty' to be paid into court."); *Miller v. Cardinale* (*In re Deville*), 280 B.R. 483, 494 (B.A.P. 9th Cir. 2002) *aff'd,* 361 F.3d 539 (9th Cir. 2004).

In some cases, a court may award attorneys' fees under its inherent authority following a Rule 9011 inquiry. In *First Bank of Marietta v. Hartford Underwriters Insurance Co.*, the Sixth Circuit Court of Appeals held that "'in addition to Rule 11 and 28 U.S.C. § 1927, a district court may award sanctions pursuant to its inherent powers when bad faith occurs.'" 307 F.3d 501, 512 (6th Cir. 2002) (quoting *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 375 (6th Cir. 1996)). "The district court has the inherent authority to award fees when a party litigates 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Hartford Underwriters*, 307 F.3d at 512 (quoting *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir.1997) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S. Ct. 1612, 1622 (1975) (internal quotation marks omitted)) In *Hartford Underwriters*, the district court had given notice that it was considering using its inherent authority to sanction. The Sixth Circuit made a point of noting:

> We initially note that the district court exercised caution in exercising its inherent powers by giving notice of its consideration, conducting a separate hearing and considering post-hearing briefs in determining whether First Bank acted in bad faith and filed its claim without a colorable basis. This is in accord with our precedents. *Ray A. Scharer & Co. v. Plabell Rubber Prods., Inc.,* 858 F.2d 317, 320 (6th Cir. 1988).

*Hartford Underwriters*, 307 F.3d at 519.

In this case, the bankruptcy court's Sanctions Order is titled "Order Re: Rule 9011." It only cites Rule 9011 as the basis for sanctions. It does not refer to any other statutory authority, such as 28 U.S.C. § 1927 or 11 U.S.C. § 105, or its own inherent authority. Thus, the Panel is compelled to find that the sanctions were awarded solely pursuant to Rule 9011 and not on any other basis. Accordingly, the bankruptcy court erred in awarding attorneys' fees to Jones' counsel because Rule 9011 does not permit "fee shifting" when the court enters an order to show cause on its own

initiative. This leaves for consideration the propriety of the other sanctions imposed by the bankruptcy court.

## B. Clearly Erroneous Factual Findings

Hoover challenges many of the factual findings made by the bankruptcy court in its Sanctions Order. Findings of fact are reviewed under the clearly erroneous standard. *Brock v. Hammonds* (*In re Triton Enters., Inc.*), 464 B.R. 62 (B.A.P. 6th Cir. 2011).

> Under the clearly erroneous standard, the Panel must give deference to the bankruptcy court as the finder of fact. The bankruptcy court is in the best position to assess the testimony and credibility of witnesses. Thus, however we might individually view the evidence if we were the triers of fact, it is clear that we are required to give great weight to the findings of the trial court which had the opportunity to see the witnesses, to weigh their evidence as it was presented, to view the demeanor of the persons who testified in court, and to determine all issues of credibility.

*Triton Enters.*, 464 B.R. at 62 (internal quotations marks and citations omitted). *See also* Fed. R. Civ. P. 52(a).[4] The Supreme Court has explained the clearly erroneous standard as follows:

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1166 (6th Cir.1996) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S. Ct. 1504, 1511 (1985)). With this standard in mind, the Panel has carefully reviewed the voluminous record in this appeal.

---

[4] Prior to December 2014, Federal Rule of Bankruptcy Procedure 8013 reiterated the language of Federal Rule of Civil Procedure 52(a)(6) governing appeals. In December 2014, Part VIII of the Federal Rules of Bankruptcy Procedure (addressing appeals in bankruptcy cases) was extensively amended and renumbered. The language of Bankruptcy Rule 8013 was omitted. However, the Panel holds that the standard of review, which is well established by case law, has not changed.

*In re Aubiel*, 534 B.R. 300, 302 n.2 (B.A.P. 6th Cir. 2015).

The bankruptcy court set forth two sections of factual findings in the Sanctions Order. The bankruptcy court titled one section: "Background Facts." The bankruptcy court labeled the other section: "Findings of Fact re: Rule 9011." Within these two sections the bankruptcy court went back and forth between making specific findings of fact regarding representations made by Hoover during the hearings and in his pleadings, and general factual conclusions about the merits of the underlying cause of action that is the basis for the adversary proceeding. We now address each factual finding regarding Hoover's representations. To the extent that any factual finding is related to whether or not there is an evidentiary basis for the underlying cause of action, it will be addressed in that context in Part C of this opinion.

### 1. Representations Regarding State Court Action

The bankruptcy court found that Hoover made several representations that the State Court Action was "ready for trial." Sanctions Order at 1, 3, 4. For example, the bankruptcy court noted that in his Proposed Findings of Fact and Conclusions of Law filed on September 7, 2012 in the bankruptcy case in support of the Motion for Relief, Hoover asserted: "The parties are ready for trial in the State Court Action." Sanctions Order at 3 (citing Bankr. Case ECF No. 32 ¶ 16). Additionally, the bankruptcy court cited paragraphs 8 and 9 of Hoover's Proposed Findings of Fact and Conclusions of Law for the assertion that "Mr. Hoover represented to this Court that discovery in the State Court Action had been conducted and the trial of the matter was set to commence on August 27, 2012." Sanctions Order at 3. The bankruptcy court's Sanctions Order appears to interpret Hoover's statements as indicating that discovery was complete. In actuality, when taken as a whole the Proposed Findings of Fact and Conclusions of Law show only that: discovery was on-going (¶ 7); Jones had actively participated in discovery (¶ 8); trial had been scheduled (¶ 9); but the trial had been postponed and the matter stayed pending a decision on the Motion for Relief from the automatic stay (¶ 11). Hoover does not convey any indication that the State Court Action trial would start on August 27, 2012, or even that discovery had been fully completed.

The Sanctions Order also noted that Hoover represented to the bankruptcy court that the State Court Action was viable as evidenced by the fact that it was going to trial. Sanctions Order at 4. Hoover made this statement in closing argument during the hearing on the Motion for Relief ("R/S Final Hearing")[5] to counter Brouse's argument that the Hargers had not shown compelling evidence that the State Court Action had merit. See R/S Final Hearing Tr. 66:13-16, Bankr. Case ECF No. 58, September 17, 2012. Hoover's assertions that the State Court Action was going to trial and that this proved the viability of the case were, of course, self-serving, and were clearly argument, not statements of fact. It is obvious that Hoover's argument during the R/S Final Hearing was that the State Court Action was further along than the bankruptcy court adversary proceeding.[6] Near the end of his argument Hoover stated: "The parties, as I said, are **nearly** ready for trial in State Court up here [sic]. And if we have to handle this through an adversary, we're going to have to work our way through that – that procedure up here. I don't think its going to be any faster up here than it would be down there." R/S Final Hearing Tr. 68:8-13 (emphasis added).[7] The bankruptcy court's finding that Hoover misrepresented the status of the State Court Action is clearly erroneous.

### 2. Representations Regarding Civil Protection Order ("CPO") Hearing

In the Sanctions Order, the bankruptcy court found: "During the course of the hearings on the Motion for Relief in this Court, Hoover implied to the Court that he was not involved in the CPO hearing in state court." Sanctions Order at 3. The bankruptcy court noted the following exchange that occurred during Hoover's examination of Jones at the hearing on the Motion for Relief:

---

[5] The Sanctions Order refers to the September 17, 2012 hearing on the Motion for Relief as the "R/S Final Hearing."

[6] The adversary proceeding had been filed just shortly prior to the R/S Final Hearing.

[7] At different times the bankruptcy court corrected both parties' use of "up here and down there" as indicating an inappropriate hierarchy of federal versus state courts.

> **Hoover:** There was this civil protective order sought by my client, I wasn't involved in that, as you know, correct?
>
> **Jones:** No, I think you were involved.

Sanctions Order at 3 (citing R/S Final Hearing Tr. 19:14-18). The bankruptcy court then found that "[i]n contrast to the suggestion by Mr. Hoover during the R/S Final Hearing, the transcript of the CPO hearing filed in support of the Debtor's opposition to granting relief from stay clearly shows that Hoover had been retained by the Hargers to represent them and that Hoover told Magistrate Shoemaker that he failed to appear at the hearing due to a scheduling error." Sanctions Order at 4.[8] The bankruptcy court noted that Ryan Harger did proceed without counsel and that the CPO was denied because the state court found Ryan Harger's testimony lacked credibility and failed to establish a basis for the relief sought. *Id.*

Because the bankruptcy court found this to be a specific misrepresentation by Hoover, it is important to look at exactly what Hoover said. During the R/S Final Hearing, Hoover stated to the court: "I wasn't counsel in the CPO hearing." R/S Final Hearing Tr. 6:12-13. The statement "I wasn't counsel in the CPO hearing" is not a misrepresentation. The initial CPO petition indicates that Ryan Harger was proceeding *pro se*. Bankr. Case ECF No. 44. The transcript of the CPO full hearing indicates that Ryan Harger stated that he had paid an attorney, Hoover, who he thought would be present for the hearing. Ryan Harger also implies that Hoover was involved in obtaining an earlier continuance of the hearing. But when the magistrate refused to grant a continuance at Ryan Harger's request, Ryan Harger decided to proceed *pro se*. CPO Hr'g Tr. 46:2–47:17, Bankr. Case ECF No. 45, December 28, 2011. Later, on the record, the magistrate stopped the proceeding to take a phone call from Hoover. The call took place in the magistrate's chambers, but the magistrate had the call recorded by a court reporter. During the phone call, Hoover stated "I do represent the Hargers, and I appeared for the previous hearing." Phone Conference Tr. 3:23-24,

---

[8] Again, this example appears to be cited by the bankruptcy court both as a specific example of a misrepresentation made by Hoover and as support for finding that he should have known he did not have an evidentiary basis for filing his pleading. The latter will be addressed in Part C.

Bankr. Case ECF No. 45, December 28, 2011. The magistrate and the opposing counsel both pointed out to Hoover that he had not filed an official appearance in the case and that his client had decided to proceed *pro se*. It appears that the phone call was very collegial. When the magistrate went back on the record in court, he stated that the phone call cleared things up and that Ryan Harger would continue *pro se*. Finally, at the conclusion of the hearing, the magistrate stated: "It appears that Mr. Dean Hoover is not counsel of record in this case. He's not filed anything so everything will be sent to your house as a *pro se* party." CPO Hr'g Tr. 115:7-13, Bankr. Case ECF No. 45, December 28, 2011.

Accordingly, the record supports Hoover's assertion that he was not "counsel in the CPO hearing." Further, even the implication that he "wasn't involved in the CPO hearing" was reasonable based on what the record reflects. Although it appears that some time during the CPO process the Hargers retained Hoover to file the State Court Action and Hoover may have been involved in obtaining a continuance of the CPO hearing, he did not file an official appearance or any pleadings in the CPO process, nor was he involved in the hearing other than a quick phone call that verified that he was not counsel of record for the matter. Accordingly, the bankruptcy court's treatment of this statement as a misrepresentation is clearly erroneous, and its reliance on it in determining sanctions is an abuse of discretion.

### 3. Representations Regarding Mediation

In a footnote in the Sanctions Order, the bankruptcy court found: "Hoover represented to the Court that mediation failed. However, the fact is that mediation never took place in the State Court Action." Sanctions Order at 5, n.4. The footnote followed a paragraph where the court explained:

> After the R/S Final Hearing, the Court held an in chambers conference with counsel wherein it was agreed that counsel would talk to their clients about the possibility of pursuing mediation in state court. The Court agreed to grant limited relief from stay for the purpose of pursuing mediation of this dispute in state court if the parties so agreed. On September 27, 2012, Hoover filed a motion he styled as an "unopposed" motion to modify the stay to permit mediation in state court. No proposed order

reflecting this agreement was submitted to the Court. Instead, on October 23, 2012, Plaintiffs filed a motion to dismiss their motion for relief from stay and a motion to dismiss their adversarial complaint and the counterclaim asserted by the Debtor.

Sanctions Order at 4-5. In the Sanctions Order, the bankruptcy court did not articulate when and where Hoover made this representation to the court. Neither the motion to withdraw the Motion for Relief, nor the motion to dismiss the adversary proceeding mentioned any mediation attempt. Likewise, Hoover never made any representations regarding any mediation attempt in his pleadings in response to the Order to Show Cause and Second Order to Show Cause.

The record reflects two instances when mediation was referenced during the hearing on the Orders to Show Cause. After Hoover rested his case, Brouse was allowed to cross examine him on his affidavit. Brouse asked Hoover why he elected to dismiss the adversary proceeding just before serious discovery was to begin. In response to that question, Hoover mentioned mediation:

> Several reasons. First, I believe you made a demand for $53,000 and you wanted my clients to enter into some kind of agreed judgment that would be forgiven if they moved out of their house. I saw – I saw that as bad faith when I believed that we were trying to resolve this issue through mediation. We also started formulating the opinion that the remedy was worse than the disease. . . . So we talked about it and I decided that – we decided jointly that instead of engaging with you any longer, wasting our time in mediation where you were making demands that were– we thought outrageous, with all due respect, that we would – we would try a new course. And that is a nonlegal course, dismiss everything. . . . And the Hargers came up with a plan to – with the help of their parents, Mr. Harger's parents in particular – to get the house fixed up enough that they could sell it and just let Mr. Jones win.

Orders to Show Cause Hr'g. Tr. 142:9-143:22 Adv. Case ECF No. 54, March 15, 2013 ("March 15, 2013 Hr'g Tr.").

Following these comments by Hoover, the following exchange occurred:

**Brouse:** Sir, did you file a complaint against me in this court for negotiating in bad faith?

**Hoover:** No.

**Brouse:** Do you happen to have a copy of this purported letter where I claimed $53,000 in damages?

-14-

**Hoover:** I do somewhere.

**Brouse:** I'd be interested to see that.

**Hoover:** I know you know it.

**Brouse:** What steps did you take to engage in mediation? Did you prepare the order for this court?

**Hoover:** No. Neither one of us did. I think I contacted– I believe– I'm a little foggy on what the court's direction was with regard to that. But I know that I contacted the Summit County Mediation Department and kind of took the – made the effort to get it going.

**Brouse:** But you did not?

**Hoover:** Neither did you.

March 15, 2013 Hr'g. Tr: 144:18-145:9.[9]

The record reflects that both Brouse and Hoover were accurate in their accusation of the other. In fact, it appears that neither of them submitted an order for the case to be mediated in state court in spite of the bankruptcy court order directed at both of them to do so. However, the record reflects that Hoover at least attempted to start the process. On September 27, 2012, he filed a motion entitled Unopposed Motion to Modify Automatic Stay to Permit State Court Mediation ("Mediation Motion"). Bankr. Case ECF No. 49. The exhibit attached to the Mediation Motion, consisting of an email stream between Hoover and Brouse, appears to reflect a lack of cooperation from Brouse on the issue of mediation. Bankr. Case ECF No. 49. In the email, Hoover asked Brouse to prepare the order for the bankruptcy court while he prepared the motion for the state court but she refused to do so, calling it "his motion." Brouse never filed a response to the motion, and Hoover never submitted a proposed order. In the adversary proceeding, the bankruptcy court entered an order on October 10, 2012 regarding the pre-trial conference. In that order the bankruptcy court stated: "Counsel shall promptly submit a proposed order with respect to the motion for relief from stay in the main case to pursue mediation in state court." Order and Memorandum of Pre-trial Conference

---

[9] To the extent that the bankruptcy court sanctioned Hoover for an alleged misrepresentation that mediation had failed, it appears that Hoover did not have specific notice as required by Rule 9011(c)(1)(B) because his comments regarding mediation occurred after the Orders to Show Cause were entered. However, due to the disposition of this appeal on other grounds the Panel will not reach this issue.

Held on October 12, 2012, Adv. Case ECF No. 9. Neither counsel submitted a proposed order regarding mediation following the October 10, 2012 order, however, on October 23, 2013, Hoover filed the Movants['] Withdrawal of Motion to Modify Automatic Stay ("Withdrawal") in the bankruptcy case and Plaintiffs' Motion to Dismiss Claims and Counterclaims ("Motion to Dismiss") in the adversary proceeding.

Additionally, during his closing argument on the Orders to Show Cause, Hoover stated: "At the end of that hearing the Court suggested that we consider mediation. We agreed to attempt mediation. That attempt failed and it was at that point we decided to move to withdraw our motion and to dismiss our case." Orders to Show Cause Hr'g. Tr. 65:5-9, Adv. Case ECF No. 55, May 9, 2013 ("May 9, 2013 Hr'g Tr."). During her closing argument, Brouse repeatedly asserted that Hoover's representation that "mediation failed" is a "complete mischaracterization" because "it didn't fail because it never happened." May 9, 2013 Hr'g Tr. 71:18-20;74:2-5. The court appears to have completely adopted Brouse's position. The language of the Sanctions Order mirrors Brouse's argument.

The record does reflect an attempt by Hoover to seek leave to go to state court for mediation, albeit a half-hearted attempt, in the form of an unopposed motion for which no proposed order was submitted. Moreover, Hoover alleged that a demand was made outside of the formal process that he and his clients considered "outrageous" and an indication that mediation would not be productive. Hoover did not state that mediation had occurred and failed. Rather, he stated that the *attempt* at mediation had failed. While formal mediation in state court may not have occurred, Hoover's statement during closing argument that the attempt at mediation had failed was not a misrepresentation of the facts. Therefore, the bankruptcy court's finding that Hoover "misrepresented the status of mediation of the State Court Action" is clearly erroneous. Sanctions Order at 11.

### 4. Representations Regarding CarMeds Ownership

One of the reasons the bankruptcy court sanctioned Hoover was its finding that Hoover engaged in "intentional mischaracterization of evidence." Sanctions Order at 6. The bankruptcy court cited Hoover's description of Jones' deposition testimony regarding CarMeds as an example of this intentional mischaracterization.

In his responsive brief to the Order to Show Cause, Hoover stated: "Debtor admitted that he routes the money from the CarMeds business through his mother who gives it back to him." Plaintiffs' Hr'g Br. Re: Rule 9011 ("Responsive Brief"), Adv. Case ECF No. 19 at 5, Feb. 5, 2013. Hoover cited specific page and line numbers and attached a partial transcript of Jones' deposition to his brief. In the same section of his brief, Hoover also pointed the bankruptcy court to other evidence that had been attached to the complaint, namely Grad's deposition transcript wherein Grad frequently refers to Jones as his employer and indicates that Jones' mother had little involvement in the business, and a letter from CarMeds to Grad which Jones signed as President of CarMeds.

There are two problems with the way that Hoover characterized Jones' testimony. First is the use of the word "admitted." Second is use of the word "routes." Jones did not "admit" that he "routes" money through the CarMeds business. Rather, Jones stated: "My mother benefits from CarMeds and gives me money." The words "admit" or "admission" are legal terms of art. Jones' statement does not amount to an "admission." Further, the word "routes" implies that Jones controls the money coming into CarMeds and how it is used. Jones' statement does not admit or even imply this level of control.

However, it appears to the Panel that Hoover was not trying to mislead the bankruptcy court. If he was trying to mislead the bankruptcy court, he would not have cited to the exact page and line number and provided the court with a copy of the deposition. Rather, Hoover was making an argument that, based on Grad's deposition, the letter signed by Jones as president, and Jones' own deposition, a court or jury could conclude that Jones was the defacto owner of CarMeds. Hoover

was just being a zealous advocate. The Panel holds that the bankruptcy court's finding that Hoover "intentionally mischaracterized" Jones' testimony is clearly erroneous. Accordingly, the bankruptcy court abused its discretion by imposing sanctions beyond a simple admonition for Hoover's characterization of Jones' testimony.[10]

### 5. Representations Regarding Grad's Story

In response to the Order to Show Cause, Hoover made the following representation:

> During the proceedings on the Hargers' state court civil claims against Mr. Grad and Mr. Jones, to possibly extricate his client from the case, Mr. Grad's attorney admitted to me that his client, Mr. Grad, was considering changing his story about what happened and about Mr. Jones' involvement but was afraid to do so because his client might be charged with falsifying a police report. Mr. Grad's attorney told me he intended to talk to the prosecutor about that and later told me the prosecutor threatened to prosecute if Mr. Grad changed his story.

Affidavit of Dean S. Hoover ("Initial Affidavit"), Adv. Case ECF No. 19-6 ¶ 6, Feb. 5, 2013.

In response to Hoover's Initial Affidavit, Brouse obtained and filed affidavits from Munyer, Grad's attorney, and Parker, the prosecuting attorney. Both affidavits directly challenged Hoover's representations made in his Initial Affidavit. In his affidavit, Parker stated: "Paragraph 6 represents that I threatened to prosecute Grad if he changed his story. This never happened." Affidavit of Christopher Parker ("Parker Affidavit"), Adv. Case ECF No. 21, Feb. 6, 2013. Munyer's affidavit refuted Hoover's representations regarding the possibility of Grad changing his story.

> 6. During the pendency of that case, Attorney Hoover **approached me** claiming his client had an alibi and asked if my client would change his story to inculpate Jones (in a conspiracy to have Mr. Harger falsely arrested) in exchange for an agreement that Mr. Grad would be dismissed from the case.
>
> . . . .

---

[10] The Panel admonishes Hoover to more clearly distinguish when he is making an argument rather than stating fact. Hoover should also be more precise in the use of legal terms of art such as the words "admits" or "admission."

10. I never, at any point, expressly or impliedly, told, conveyed, or "admitted to [Attorney Hoover] that [my] client, Mr. Grad, was considering changing his story about what happened and about Mr. Jones' involvement but was afraid to do so because [my] client might be charged with falsifying a police report."

Affidavit of Noah Munyer ("Munyer Affidavit"), Adv. Case ECF No. 22 ¶¶ 6, 10 (emphasis and alterations in original), Feb. 6, 2013.

The discrepancies between these affidavits caused the bankruptcy court great concern because, as the court explained at the February 6, 2013 hearing, in addition to its concern that Hoover had brought a case for which he should have known he did not have sufficient evidence to corroborate his clients' allegations, it appeared to the bankruptcy court that Hoover himself had filed an affidavit that manufactured a story to support his clients' case. In fact, the Sanctions Order quotes a colloquy the bankruptcy court had with Hoover on the record which reveals the court's view of what it called "Hoover's wholly unprofessional mindset."

**Hoover**: . . . What we basically have here is two very different stories, each of which has evidentiary value. . . . I believe Rule 9011 requires us to have a story. Not that it's

**Court (interrupting):** Rule 9011 doesn't require you to have a story.

**Hoover (interrupting):** Evidence is what

**Court (continuing):** Rule 9011 requires you to deal with facts.

**Hoover:** I agree. I didn't mean to be — to use "story" in a sense that it was fiction. We believe that we have an obligation to deal with objective facts as we see those facts. And we believe that we have those facts. And if you put Grad's testimony aside, we still have those facts. . . . So we went through each of the elements in 9011 and marshaled some of the evidence that shows we have facts. . . .

**Court:** The question that I put to you was statements that you made in the pleading that you filed with this court yesterday dealing with a show cause with respect to Rule 9011 in which Mr. Munyez (sic, Mr. Munyer) has provided an affidavit that is

**Hoover (interrupting):** disputed

**Court:** is at total odds

**Hoover (interrupting again):** and disputed . . . and disputed – his affidavit is false – there's a lot of parsing of words going on in the two affidavits from Parker and

Munyer and we have a different version – what we consider to be the true version of what happened. Now if the court wants to proceed on a 9011 against me for what I filed as opposed to motion to lift stay and the adversary proceeding, I would welcome the opportunity, but I would right now – those affidavits are hearsay and I would move to strike them. I haven't had an opportunity to discover the full story from those two individuals. . . .

Sanctions Order at 9 (quoting Feb. 6, 2013 Hr'g Tr. 11:49:42-11:52:23).

The bankruptcy court cited this colloquy to demonstrate that Hoover just told "stories" and spun "a convenient yarn that contradicts historical facts." Sanctions Order at 9. A large portion of the bankruptcy court's Sanctions Order focused on the discrepancies between Hoover's Affidavits and the Munyer and Parker Affidavits as proof that Hoover's narrative was contradictory to the facts of the case. Sanctions Order at 6-8. When comparing Hoover's Initial Affidavit to the Munyer Affidavit and Parker Affidavit, there appears to be a huge difference in "stories." The Munyer and Parker Affidavits can be read as completely refuting the idea that Grad ever considered changing his version of the facts. However, when all of the affidavits are compared along with the testimony given at trial, it is clear that there were discussions between Hoover and Munyer regarding whether Grad would alter his prospective testimony.

The bankruptcy court stated:

The Court also credits Munyer's testimony that this conversation was initiated by Hoover and took place following a conference at the state court, not in the presence of Mrs. Dana Hoover following the deposition of Mr. Grad, as suggested by Hoover in the Responding Affidavit and by Dana Hoover's Affidavit, paragraph 4. The Court also credits Munyer's testimony that Hoover approached him. Dana Hoover's Affidavit, particularly with respect to her having overheard conversations between Hoover and Munyer, appears to this court to be yet another part of the story "manufactured" by Hoover.

Sanctions Order at 7-8 (discussing Affidavit of Dean S. Hoover ("Responding Affidavit") Adv. Case ECF No. 29, March 12, 2013). Thus, there are four factual findings to be addressed in this decision regarding the bankruptcy court's conclusions as to the discussions about a possible change in Grad's version of events: (1) how the conversation was initiated; (2) whether Munyer approached Hoover;

-20-

(3) the location(s) of conversation(s); and (4) whether Dana Hoover, Hoover's wife/legal assistant, overheard any conversation(s).

During the hearing on the Orders to Show Cause, Munyer confirmed that there was a conversation between himself and Hoover about Grad changing his testimony. March 15, 2013 Hr'g Tr. 60:21-23. Munyer's version of the conversation was that he and Hoover were discussing the case following a pre-trial hearing in state court. The conversation took place in the hallway outside of the courtroom. Munyer testified that he stated "something like my guy doesn't have any money . . . what are we going to do here?" In that conversation Hoover raised the idea of Grad changing his story. March 15, 2013 Hr'g Tr. 61:2-62:3. The bankruptcy court found Munyer's version of events believable, describing Munyer's testimony as "completely trustworthy in contrast to the self-serving Initial Hoover Affidavit, Responding Affidavit and affidavit of Dana Hoover[.]" Sanctions Order at 8. The bankruptcy court did not explain in the Sanctions Order why it did not credit Munyer's own testimony on re-cross examination.

On re-cross examination, Munyer testified that the concept that Grad might change his story was Hoover's idea, that Munyer indicated that he would discuss it with his client, and that he did so on June 25, 2012 when he met with his client and his client's mother. March 15, 2013 Hr'g Tr. 65:6-19. Munyer also testified that the first time the idea was discussed between himself and Hoover was after one of two hearings, but he was not sure which one. Tr. 66:21-25. Munyer agreed that they had a pre-trial hearing in February, but he did not remember the conversation with Hoover taking place at that time. He testified that it could have been June 18, 2012, or May 25, 2012. Tr. 67:3-23. Munyer also testified regarding an email exchange that took place on June 25, 2012 and a possible phone call on July 5, 2012. When Hoover asked him how many times they talked about the possibility of Grad changing his story, Munyer responded: "I'm not sure. I know we talked once in court in person and we probably spoke once on the telephone." Tr. 72:4-7. When Hoover asked Munyer if he could put a date on the conversation that occurred in the courthouse, Munyer responded "I thought it was after the Magistrate Shoemaker date, which was in – I think May 25. Is that what

it was? . . . I'm not – but, again, I'm not sure. I didn't – I didn't keep copious notes on those conversations." Tr. 72:12-19.

When Munyer's testimony on redirect and re-cross examination is compared to Hoover's Responding Affidavit, they are very similar. Hoover stated that he did not initially approach Munyer, but rather Munyer approached him after their first in-person meeting, which he believed was the pre-trial conference in the State Court Action on February 27, 2012. Hoover asserted that Munyer raised the subject by a comment that his client, Grad, did not have the money to pay any judgment and asked what he could do to get his client out of the lawsuit. Hoover's narrative was that he shared his theory of the case that Grad was lying for Jones, and he offered to consider letting Grad out if he changed his story and told the truth. Responding Affidavit ¶ 19, In his Responding Affidavit, Hoover accused Munyer of making false assertions in his affidavit when he denied that he ever indicated that Grad was considering changing his story and denied that Grad was afraid to do so because of potential criminal charges for falsifying a police report. Hoover reiterated: "The conversations I recall took place over the time period from the above pretrial conference on February 27, 2012, at my office on March 27, 2012 after Mr. Grad's deposition, in the hallway of the Summit County courthouse after [a] hearing on June 18, 2012 and ending about July 5, 2012 when I returned Mr. Munyer's phone message as well as points in between." Responding Affidavit ¶ 24. Clearly, Munyer and Hoover agree that an ongoing conversation occurred on multiple dates through multiple methods of communication. Moreover, the parties agreed that Munyer walked up to Hoover and started a conversation intended to reach a resolution for his client and in that conversation Hoover raised the idea of Grad changing his story. March 15, 2013 Hr'g Tr. 61:2-62:3.

Generally, appellate courts give great weight to a trial court's determinations of credibility because the trial court is the court that observes the parties' demeanor. However, in this case the bankruptcy court seemed to credit Munyer and discredit Hoover on points where their testimonies are actually consistent. Both Munyer and Hoover testified that Hoover was the one who raised the concept of Grad changing his story after Munyer opened a conversation with a comment about Grad's limited means. It appears that Munyer interpreted Hoover's Initial Affidavit as claiming that

the concept of Grad changing his story was Munyer's idea. In his affidavit, Munyer so vehemently rejected this concept, that it ended up reading as if Munyer denied that there was ever any discussion or possibility that Grad might change his story. However, during Munyer's testimony on cross and re-cross examination, he clearly admitted that there was some sort of on-going discussion about the possibility of Grad changing his testimony (although he insisted it was never likely). In his Initial Affidavit, Hoover did not say that Munyer approached him and did not say that the concept of Grad changing his story was Munyer's idea. Additionally, in his Responding Affidavit, when Hoover stated that Munyer approached him, Hoover only conveyed that Munyer walked up to him and started a conversation. Hoover stated that during this conversation, Munyer raised the idea of getting Grad out of the case, and that Hoover was the one who suggested that Grad change his story. Hoover also indicated that this first conversation occurred at the courthouse. Responding Affidavit ¶ 19. Accordingly, two of the matters that the bankruptcy court found to be misrepresentations by Hoover, i.e. who initiated the conversation and whether Munyer approached Hoover, were areas where the parties were not actually in disagreement.

Two details that Munyer and Hoover disagreed about are whether they had a conversation at Hoover's office following Grad's deposition and whether Dana Hoover could have overheard any of their conversations. Munyer testified about a conversation with Jones in the parking lot of Hoover's office but clearly recalls being in a hurry to leave because it had been his first deposition and he had found it "contentious." March 15, 2013 Hr'g Tr. 62:7-22. On re-cross examination, Hoover attempted to elicit testimony from Munyer regarding the possibility of Dana Hoover having overheard any of the conversations. When asked if he denied ever having a conversation in front of Dana Hoover, Munyer responded:"I don't think that ever occurred. I don't know when it would have occurred, because she wasn't at the court with us and you and I were on the telephone[.]" Tr. 72:23-25. Hoover then prompted Munyer "and you and I were in my office, correct?" Tr. 73:2. At that point the bankruptcy court interrupted, stating that Munyer had already answered the question about

what had happened after the deposition. The bankruptcy court then instructed Hoover to "Move on." Tr. 73:6.[11]

Munyer never directly addressed Dana Hoover's claims that she had communicated directly with Munyer via telephone and email. Dana Hoover Affidavit ¶ 5. Nor did he ever address her claim that she overheard the July 5, 2012 phone conversation. Dana Hoover Affidavit ¶ 6. Dana Hoover was not called to testify at the hearing on the Orders to Show Cause. The bankruptcy court's conclusion that Dana Hoover's affidavit was not credible appears to be based solely on its comparison to the limited statement from Munyer that the bankruptcy court found credible. Even if Dana Hoover's statements about overhearing conversations are not credible, those statements are not misrepresentations made by Hoover inasmuch as he was not the affiant and did not sign the affidavit. While Hoover does assert that he remembers a conversation following Grad's deposition (Responding Affidavit ¶ 24), he does not assert that Dana Hoover overheard that conversation. Accordingly, the Panel holds that to the extent that sanctions were awarded against Hoover for statements made in Dana Hoover's affidavit, the bankruptcy court abused its discretion.

## 6. Representations Regarding State Criminal Case

Another key part of the bankruptcy court's reasoning for sanctioning Hoover was that the bankruptcy court believed that Hoover mischaracterized why the State Criminal Case was dismissed. The bankruptcy court observed that "[t]he story Hoover tells is that the State Court Criminal Case

---

[11] During Hoover's own testimony at the hearing (under cross examination by Brouse), Hoover attempted to explain the layout of his office. It appears that this testimony may have been going to the possibility that Dana Hoover could have overheard a conversation between him and Munyer without being noticed. This testimony was cut off by the court as "irrelevant." Tr. 132:18-23. The court was correct that the testimony was not responsive to the question asked on cross examination. In her affidavit, Dana Hoover stated that she was in the office on March 27, 2012, for the deposition of Grad and that after the deposition Munyer and Hoover talked in her presence. Affidavit of Dana T. Hoover ("Dana Hoover Affidavit"), ECF No. 30 ¶ 4, March 12, 2013. Dana Hoover also asserted that over the next few months, she had several conversations and emails with Munyer while trying to schedule more discovery and during those conversations she urged Munyer to get Grad to tell the truth. Dana Hoover Affidavit ¶ 5. Finally, Dana Hoover claimed to have overheard a telephone conversation between Munyer and Hoover on July 5, 2012, in which Munyer indicated that Grad would not change his story and that Parker would pursue penalties against Grad if he did. Dana Hoover Affidavit ¶ 6.

against Mr. Harger was dismissed because Mr. Grad wanted to recant and instead place responsibility [for the plot to inculpate Mr. Harger] on the Debtor." Sanctions Order at 6. The bankruptcy court also observed that it was "Hoover's assertion that the reason the prosecutor dropped the case was because Grad was going to change his story." Sanctions Order at 8. The bankruptcy court did not give any citations to the record for these alleged statements.

Conversely, the bankruptcy court found credible "Munyer's testimony that Grad had no intention of and never considered changing his testimony." Sanctions Order at 7. Additionally, the bankruptcy court found:

> During the cross examination of Mr. Munyer, Hoover attempted to show that Munyer's statement that Mr. Grad was prepared to testify against Harger . . . was a false statement. Hoover was not successful in this attempt. Rather this is another example of Hoover's inability to discern fiction from fact.

Sanctions Order at 7. Later in the order, the bankruptcy court stated: "In short, Grad would have testified against Harger in the State Court Criminal Case, had it not been dropped by the prosecutor for reasons not related in any way to a change in position by Grad." *Id.*

The record, however, demonstrates that Hoover never asserted that the State Criminal Case was dropped because Grad was going to change his story. Rather, he posited two reasons why the State Criminal Case was dismissed. First, he stated that the State Criminal Case was dismissed because Parker knew that Grad's statements were inconsistent with the facts. Initial Affidavit ¶ 5; Pl. Hr'g Br. RE: Rule 9011 ("Pl. 9011 Br."), Adv. Case ECF No. 19, Feb. 5, 2013 at 19; Responding Affidavit ¶ 13. Second, Hoover asserted that Parker dismissed the State Criminal Case because Grad refused to cooperate. Responding Affidavit ¶ 13.

In his Responding Affidavit, Hoover described a phone call between himself and Parker two days before trial in the State Criminal Case: Parker had called Hoover to tell Hoover that the case would be dismissed. Hoover explained:

> I agreed with the dismissal because, if he had looked at any of the discovery materials, he would know Mr. Grad was lying and so Mr. Parker would lose. I went over the evidence . . . . I then asked whether Mr. Parker was dismissing the charges "with prejudice" or "without prejudice". Mr Parker said "without". I told him I would object to a dismissal without prejudice because the defense was prepared for trial, we thought we would win based on what I had just told him, we did not want a "without prejudice" dismissal to possibly stand in our way of filing following civil suits and we did not want any possibility remaining that the charges might be re-filed. Mr. Parker responded that he would not agree to dismiss with prejudice but added words similar to "I will never re-file the charges". I remember he put emphasis on the word "I" which I took to be further confirmation that he did not believe in the case. I attempted to pry out Mr. Parker's reasoning for a dismissal without prejudice . . . and Mr. Parker simply did not respond. . . . For all of the above reasons, I had good grounds for what I said at paragraph 5 of my previous affidavit. If Mr. Parker had any other reasons for dismissing the case, they were not known to me until I appealed his dismissal without prejudice . . . . In the appellate brief he filed, Mr. Parker said he dismissed because Mr. Grad refused to cooperate or words to that effect.

Responding Affidavit ¶ 13.

During the trial on the Orders to Show Cause, Parker agreed with Hoover's general assessment of the phone conversation. May 9, 2013 Hr'g Tr.15:10-16:21. Hoover asked Parker: "Now, did you disagree with any of those statements?" Parker responded: "I don't know if I said, I disagree with that. I just listened to you . . . ." Parker also stated that he did not know whether Hoover took his silence as an agreement of Hoover's assessment of the evidence. During his cross examination, Parker acknowledged that some of the inconsistencies between his own affidavit and Hoover's could be reconciled, as they were based on perspective. May 9, 2013 Hr'g Tr. 42:2-4. Parker also twice agreed that some of what he had labeled as "false statements" in Hoover's Initial Affidavit were really matters of opinion. May 9, 2013 Hr'g Tr. 47:2-5; 49:6-8.

Thus, the Panel finds that the trial testimony from Parker shows that he knew prior to dismissal about Hoover's insistence that inconsistencies existed between Grad's statements and the evidence. While his testimony clarifies that those inconsistencies were not the reason he dismissed the State Criminal Case, his testimony also indicates that, from Hoover's perspective, the

-26-

inconsistencies might have seemed like a reason for dismissal. More importantly, Parker's testimony shows that Hoover was absolutely correct when he represented to the bankruptcy court that the State Criminal Case was dropped because Grad no longer wanted to proceed. May 9, 2013 Hr'g. Tr. 17:6-10. In addition to Parker's testimony, Hoover elicited testimony at the trial from Munyer about a *pro se* handwritten pleading filed by Grad in the State Court Case wherein Grad stated that he had "revoked the charges" against Ryan Harger rather than the prosecutor dismissing for his own reasons. Munyer did not deny that Grad made the statement, although he attempted to discount it by noting that it was "a layman's written response without the advice of counsel." March 15, 2013 Hr'g Tr. 43:19-44:12. Munyer testified:

> I've spoken to Chris Parker and to Jonathan Grad about this exact issue, and they're both in sync. [B]efore the trial Chris Parker contacted his victim, who was Jonathan Grad, and said something to the effect of, do you care about this case? You know, do you want to prosecute? Do you want to go forward? Something of that nature. And he [Grad] said, I don't live there. I don't know those people. I'm never coming back. I don't care what happens with it.

Tr. 44:17-25.

The statement by Parker, who the bankruptcy court found credible, and Grad's own statement support Hoover's representation that the State Criminal Case was dropped because Grad did not want to proceed. Even Jones testified that Parker advised him that the matter was not going forward because Grad was not going to pursue it. R/S Final Hearing Tr. 16:17-18. While the parties may not agree on what story Grad would have told if he had been forced to testify, all of the witnesses' statements lead to the conclusion that Grad's lack of desire to proceed led Parker to drop the case. Accordingly, the bankruptcy court's finding that Hoover had asserted that the case was dropped because Grad was going to change his story is clearly erroneous. Further, the bankruptcy court's finding that this was "another example of Hoover's inability to discern fiction from fact" is clearly erroneous. To the extent sanctions were based on these findings, they are an abuse of discretion.[12]

---

[12] In his affidavit, Parker stated: "Paragraph 6 [of Hoover's Initial Affidavit] represents that I threatened to prosecute Grad if he changed his story. This never happened." Parker Affidavit ¶ 8. Hoover responded that his Initial Affidavit only relayed statements by Munyer, not statements of fact from personal knowledge. Responding Affidavit ¶ 14. Later, during cross examination, Parker admitted that in Hoover's affidavit, Hoover merely reported what he

### 7. Alleged Misconduct in the State Court Action

In its Sanctions Order, the bankruptcy court recounted an allegation made by Munyer of misconduct by Hoover in the State Court Action. Sanctions Order at 7, n.5 (quoting Munyer Affidavit ¶ 14).

> Mr. Hoover attempted to obtain sanctions and attorney fees of $1,378.50 against Jonathan Grad for failure to appear at a deposition without excuse. Sanctions were denied. What Mr. Hoover did not know when he moved for sanctions was that Mr. Grad had contacted the court, at or around the deposition date, and advised the court of his attempts to reschedule the deposition. Mr. Hoover hung up on him. The court noted in its order that Mr. Hoover did not deny Mr. Grad's claims. Sanctions against Mr. Grad were denied.

*Id.* The bankruptcy court then noted, "As Munyer points out, the story Hoover told to the [state] Court failed to mention that Mr. Grad had called him to attempt to reschedule." *Id.*

During his cross examination of Munyer, Hoover was able to establish that Munyer's affidavit had not related the complete story of this event to the bankruptcy court. Munyer admitted that Grad had "probably" told him that Hoover had informed Grad that Grad still had to appear at the deposition. Munyer also admitted that Hoover had told Grad that he could not talk to Grad because Grad had retained an attorney. March 15, 2013 Hr'g. Tr. 33:1-36:6. Further, the state court did not sanction Hoover for a misrepresentation, and, although the state court did not sanction Grad

---

claimed that Munyer told him and that Parker would not know whether or not Munyer had said that. May 9, 2013 Hr'g Tr. 21:22-22:19.

In his Responding Affidavit, Hoover attempted to make sense of the seemingly conflicting accounts of Grad's possible prosecution if he changed his story. Hoover recounted that "it was my recommendation to Mr. Munyer that, before Mr. Grad changed his story, Mr. Munyer had better confer with Mr. Parker to make sure Mr. Grad would not end up being prosecuted." Responding Affidavit ¶ 14 (emphasis in original). Additionally, Hoover noted that Laura Grad had testified in a deposition that Munyer had told her that "Mr. Grad faced prosecution if Mr. Grad changed his story[.]" *Id.* (Jonathan Grad's mother, Laura, was present during a meeting between Munyer and Grad when they discussed Hoover's suggestion that Grad reconsider his prospective testimony. Her deposition is not part of the record on appeal.)

The Panel notes that in the Sanctions Order the bankruptcy court did not focus on whether Munyer made any representations regarding what Parker said about the possible prosecution of Grad. The Panel finds that the bankruptcy court imposed sanctions based in part on its findings that Hoover had made assertions that the State Criminal Case was dismissed because Grad was going to change his story. Those findings were clearly erroneous. Therefore, the Panel does not need to reconcile the different accounts regarding whether prosecution of Grad was threatened or who reported such.

for his failure to appear at the deposition, it did grant Hoover's motion to compel.  Debtor's Reply Br. RE: 9011 Sanctions, Ex. 3, Adv. Case ECF. No. 20-3, March 2, 2012.

In the Sanctions Order, the bankruptcy court recounted this "misconduct" by Hoover in a footnote.  Perhaps the bankruptcy court recognized that because it was not misconduct during the bankruptcy case, it was not sanctionable by the bankruptcy court.  But the inclusion of this footnote in the order is an example of how the bankruptcy court credited Munyer's affidavit, even when Munyer's own testimony at trial contradicted it or cast doubt on it.  The inclusion of this footnote is an indication that the bankruptcy court considered this allegation as part of the cumulative evidence of Hoover's dishonesty and the need for severe sanctions.  In fact, the bankruptcy court specifically stated in the Sanctions Order: "Hoover has mischaracterized to this Court matters that have taken place elsewhere."  Sanctions Order at 11.  The Panel finds that the bankruptcy court abused its discretion when it considered this allegation in determining sanctions.  Not only did this alleged misconduct occur in a nonbankruptcy forum, Munyer's own testimony cast serious doubt about whether Hoover's conduct in the state case even amounted to misconduct at all.

## 8. Conclusion Regarding Factual Findings

The bankruptcy court summarized its factual findings regarding Hoover's mischaracterizations thus:

> Hoover appears to misunderstand the nature of his role.  He is not to be the author of an uncorroborated story.  In his advocacy, he can frame a narrative of prior events that is supported by admissible evidence.  As an officer of the court, however, he cannot simply spin a convenient yarn that contradicts historical facts.  Examining affidavits executed by Hoover and filed in this case in relation to the Rule 9011 issues leads me to conclude that he sought to defend against Rule 9011 issues with further violations of that rule and worse.  When the assertions in the Initial Hoover Affidavit were promptly controverted in the Munyer and Parker Affidavits, Hoover continued to expand the scope of his self-serving and inaccurate prior statements by filing a Responding Affidavit.

Sanctions Order at 8-9. Setting aside that the last sentence seems to ignore the fact that the bankruptcy court required Hoover to file the Responding Affidavit as his direct testimony, the bankruptcy court appears to have been so offended by the discrepancies between the Hoover's Initial Affidavit and the Munyer and Parker Affidavits that it rejected all evidence presented that countered the version of events described in the Munyer Affidavit, even when that evidence was Munyer's own later testimony at trial.[13] In its Sanctions Order, the bankruptcy court did not address any of the trial testimony by Munyer and Parker that corroborated parts of Hoover's affidavits or contradicted their own. This one-sided analysis of the evidence led to the bankruptcy court making several clearly erroneous factual findings. All of the attorneys were advocates in a highly contentious legal battle that involved both the state court and bankruptcy court in civil and criminal matters. Parker, the state court prosecutor, who appeared to be the most neutral, admitted that much of Hoover's Initial Affidavit that he had originally declared false could be attributed to perspective or advocacy. The bankruptcy court should have come to the same conclusion. The bankruptcy court's conclusion that Hoover's narrative contradicted historical fact is clearly erroneous. While there are some inconsistencies between Hoover's narrative and others', those differences do not rise to the level required to support sanctions pursuant to Rule 9011.

## C. Evidentiary Basis for Filings

The original issue to be addressed by the Order to Show Cause was whether Hoover was justified in filing the Motion for Relief and the Adversary Complaint. The bankruptcy court cited the correct standard for making its determination. "To determine whether the reliance is reasonable, the bankruptcy court must evaluate the attorney's conduct based on what was reasonable to believe at the time the motion was submitted." Sanctions Order at 10 (citing *In re Downs*, 103 F.3d 472, 481 (6th Cir. 1996); *McGhee v. Sanilac County*, 934 F.2d 89 (6th Cir. 1991)). The bankruptcy court then held:

---

[13] *See* Section IV.B.5.

At the time this case was filed, none of the Harger's [sic] allegations against the Debtor had been independently verified, and Hoover knew that the evidence on which he had intended to rely in the state court did not exist. Hoover's continued insistence that he had evidence to prove his clients' claims, without identifying the evidence specifically, is not reasonable. Hoover had a duty to verify the existence of the alleged video evidence. He was remiss in relying upon its purported existence without having seen it for himself. Prior to the point of commencing an adversary proceeding seeking a determination of non dischargeability, verifying the existence of such purported evidence was essential under the circumstances. His failure to do so was unreasonable, again particularly as Harger's lack of credibility grew.

Sanctions Order at 11. The bankruptcy court had previously found:

Hoover, though he may initially have credited the statements of his clients, was not reasonable in continuing to believe their claim. According to Hoover, he conducted extensive discovery in the State Court Action and claimed to have been prepared for trial in the State Court Action; given these representations to this court, he is charged with knowledge that there were no videos and no police reports to corroborate his clients' version of events.

Sanctions Order at 6. Additionally, the bankruptcy court stated:

Hoover continues to suggest that he has an evidentiary basis for the allegations in the State Court Action, the Motion for Relief and the Adversary Complaint. However, he has not pointed to any specific evidence supporting any of his allegations. As previously noted, perhaps at first he could have reasonably believed Harger's factual contentions had evidentiary support. However, as it became clear that the Hargers did not have the video tape evidence as they originally claimed, nor the police reports to show they were upset by the alleged harassment by Mr. Jones, Mr. Hoover's reliance on his clients' self-serving and uncorroborated statements became unreasonable, particularly in light of his client's documented aggressive actions.

Sanctions Order at 8.

The problem with the bankruptcy court's findings is that, even though the bankruptcy court acknowledged that it must judge Hoover's actions based on what was reasonable for him to believe about his clients' case at the time he filed the Motion for Relief and the Adversary Complaint, the Sanctions Order does not demonstrate that the bankruptcy court applied that standard. The bankruptcy court stated: "Hoover knew that the evidence on which he had intended to rely in the state court did not exist." Sanctions Order at 11. However, the Sanctions Order did not directly cite

to the record where Hoover described what he would rely on in the state court. Because the Sanctions Order repeatedly stated Hoover was charged with the knowledge that there were no video tapes or police reports, the Panel presumes that this is the evidence that the bankruptcy court referred to. Additionally, the bankruptcy court specifically noted that: "During the R/S Final Hearing, Hoover submitted no exhibits for use during the hearing." Sanctions Order at 4. The Panel will consider that statement in the context of the bankruptcy court's conclusion that Hoover violated Rule 9011 by filing the Motion for Relief and Adversary Complaint without a sufficient evidentiary basis. Finally, the Panel will consider whether the bankruptcy court's findings regarding the outcome of the CPO hearing had any impact on its conclusion. The Panel will consider each of these in turn.

Because Hoover is judged on what he knew at the time the pleadings were filed, not on future discovery or the outcome of the case, it is important to note the timing of the proceedings. After the State Criminal Case was dropped, Ryan Harger sought the CPO against Jones based on alleged threats against his family. The Hargers hired Hoover sometime during the CPO process but Hoover was not counsel of record for that proceeding.[14] On behalf of the Hargers, Hoover filed the State Court Action against Grad and Jones alleging conspiracy and intentional infliction of emotional distress on the theory that they had conspired to have Ryan Harger arrested on false assault charges. The state court denied the CPO, but discovery in the State Court Action was ongoing and a trial date had been set prior to the filing of Jones' bankruptcy petition. While the State Court Action was stayed as to Jones, there was still some discovery as to Grad until July 5, 2012, when the state court decided to stay the case as to Grad as well. Hoover filed the Motion for Relief on July 10, 2012. The bankruptcy court held a preliminary hearing regarding the Motion for Relief on August 15, 2012, and scheduled a final hearing for September 17, 2012. Hoover timely filed the Adversary Complaint on August 17, 2012. Hoover did not file the Adversary Complaint until after he attempted to obtain relief from the stay to pursue the action in state court. He asserts that he filed the Adversary Complaint in order to preserve his clients' rights. Responding Affidavit ¶ 8.

---

[14] *See* Section IV.B.2.

**1. Lack of Video Tape Evidence**

In the Sanctions Order, the bankruptcy court repeatedly mentioned the lack of video tape evidence as proof that Hoover should have known that there was not a sufficient evidentiary basis for the underlying cause of action. But the bankruptcy court failed to make a factual finding regarding when Hoover knew or should have known there were no video tapes. Sanction Order at 8. The bankruptcy court noted that at the R/S Final Hearing, Ryan Harger testified that he thought there were some videos. Sanctions Order at 4, n.3; R/S Final Hearing Tr. 52:12-23. Jennifer Harger admitted in her testimony during the Rule 9011 hearing that although they have surveillance cameras, they did not have video evidence because they were either recorded over or erased. Sanctions Order at 4, n.3. Hoover testified that he did not know if there was video evidence. He had never been given any. He had been told there was, the Hargers had previously thought there was, but he and they no longer believed so. March 15, 2013 Hr'g Tr. 127:25-128:11. The bottom line is that the vast majority of cases do not have video evidence of alleged events. The fact that they have cameras, but no video evidence might weaken the Hargers' case, but the lack of video evidence alone does not mean that they never should have brought the case. More importantly, there is absolutely nothing in the record showing that Hoover either lied to the bankruptcy court regarding video evidence or that he knew conclusively that his clients were lying about video evidence prior to his filing the Motion for Relief or the Adversary Complaint. In fact, during the hearing on the Motion for Relief, Hoover never asserted that he was relying on video evidence.

**2. Lack of Police Reports**

In the Sanctions Order, the bankruptcy court found that there were no police reports that corroborated the Hargers' version of events. However, Exhibit F attached to Hoover's response to the Order to Show Cause is such a report. Adv. Case ECF No. 19-7. Although the weight of this report may be questionable since, as Jennifer Harger stated to the officer at the time she made the report, it was "for documentation purposes," it is a report that was made prior to the bankruptcy filing and it corroborates the story that Hoover's clients told him. Again, the question is not whether

Hoover would win the underlying case, the question is whether at the time he filed the Motion for Relief and Adversary Complaint, Hoover, as an attorney, was unreasonable in believing his clients. Moreover, at the hearing on the Motion for Relief, Jones testified that there had been numerous reports to the police of alleged infractions on both sides. R/S Final Hearing Tr. 10:19-22. Accordingly, the bankruptcy court's factual finding that there were no police reports that corroborated the Hargers' version was clearly erroneous.

### 3. Lack of Exhibits

In the Sanctions Order, the bankruptcy court found: "During the R/S Final Hearing, Hoover submitted no exhibits for use during the hearing. He continued to maintain, however, that the State Court Action was ready for trial in state court." Sanctions Order at 4. While it is true that Hoover did not submit exhibits during the R/S Final Hearing, this fact does not have the significance attributed to it by the bankruptcy court. Because of the way Hoover interpreted the factors to consider when determining a motion for relief from the automatic stay set forth in *Sonnax Industries, Inc. v. Tri Component Products Corp.* (*In re Sonnax Industries, Inc.*), 907 F.2d 1280 (2d Cir. 1990),[15] he relied solely on the State Court Action docket, complaint, answer, and order staying the

---

[15] In *Sonnax*, the Second Circuit Court of Appeals listed a number of factors ("the *Sonnax* Factors") that may be relevant in deciding whether the stay should be lifted in order to permit litigation to continue in another forum. These factors include:

(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1285-86. While citing *Sonnax* with approval regarding the standard of review, the Sixth Circuit Court of Appeals has not expressly adopted these factors in reviewing a bankruptcy court's decision whether or not to grant relief from the automatic stay. *See Garzoni v. K-Mart Corp.* (*In re Garzoni*), 35 Fed. App'x 179, 2002 WL 962154 at *2 (6th Cir. 2002) ("The bankruptcy court considers the following factors in deciding whether to lift a stay: 1) judicial

State Court Action due to the bankruptcy case. The bankruptcy court took judicial notice of these state court documents at the beginning of the hearing, and Hoover offered no additional exhibits during the hearing. R/S Final Hearing Tr. 4:7-13, 7:24-8:3.

Nonetheless, the bankruptcy court noted that "when Debtor's counsel requested production of such evidence [from Hoover in support of the Motion for Relief], he produced none." Sanctions Order at 3. The bankruptcy case docket reflects that Brouse served Hoover with the notice of request for production of documents and interrogatories on August 16, 2012, which were due the day before the R/S Final Hearing. The bankruptcy court seemed to attribute the failure to offer exhibits at the hearing and the failure to respond to the discovery request to be an admission that evidence does not exist. However, the bankruptcy court never made a specific ruling that any issue or fact was deemed admitted due to a discovery violation. Even if that were the case, such an admission would not support the conclusion that, as the attorney, Hoover knew that evidence did not exist prior to the time he filed the Motion for Relief and the Adversary Complaint.

The bankruptcy court concluded that Hoover should have known just how weak his case was prior to filing the Motion for Relief and the Adversary Complaint; in drawing this conclusion, the bankruptcy court relied on an erroneous factual finding that discovery in the State Court Action was complete. As the Panel has already noted, Hoover did not represent to the bankruptcy court that discovery was complete. In his Motion for Relief, Hoover asserted that discovery in the State Court Action was "ongoing" at the time the bankruptcy petition was filed. See Motion for Relief, Bankr. Case ECF No. 16. During the hearing on the Motion for Relief, Hoover asserted only that the State Court action was "nearly ready for trial." R/S Final Hearing Tr. 68:9. In both of his affidavits, Hoover again asserted that if discovery in the State Court Action were to proceed, he expected to

---

economy; 2) trial readiness; 3) the resolution of preliminary bankruptcy issues; 4) the creditor's chance of success on the merits; and 5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors.") The bankruptcy court did not expressly state that it would follow the *Sonnax* Factors, but the court did give some indication that it was not looking for substantial evidence on the merits of the underlying State Court Action, stating: "What I'm hearing today is a motion for relief from stay. . . . You've been allowed a lot of latitude. With respect to this matter. . . . But the relevance of this testimony to the motion for relief from stay is certainly not clear to me." R/S Final Hearing Tr. 38:14-22.

uncover further evidence to corroborate his clients' case. Initial Affidavit ¶ 7, Responding Affidavit ¶ 7.

During the March 15, 2012 show cause hearing, Hoover admitted he had a circumstantial case when he was asked to point to specific evidence. He stated that he was relying primarily on the parties' testimony, depositions, and police reports. March 15, 2013 Hr'g Tr. 120:18-123:10. Thus, it is apparent that Hoover was not relying on videos and had specific evidence in support of the underlying State Court Action, and by extension, the Motion for Relief and the Adversary Complaint.

### 4. CPO Hearing

The bankruptcy court held that Hoover should have known that the Hargers were not credible and lacked evidence in support of their case, apparently relying on the outcome of the CPO hearing. This ruling was clearly erroneous. The bankruptcy court noted that at the CPO hearing, Ryan Harger asserted that he would have video evidence of some of the alleged incidents of Jones' aggression. But since Hoover was not present at this hearing and was not counsel of record,[16] Ryan Harger's statements at this hearing cannot be impugned to Hoover. Indeed, the State Court Action had just been filed at that point in time; so clearly, there had been no discovery upon which Hoover could reach any conclusions regarding his clients' credibility.

The bankruptcy court stated: "The CPO was denied because the state court found Mr. Harger's testimony lacked credibility and failed to establish a basis for the relief sought." Sanctions Order at 4. It is unclear what the bankruptcy court was relying on as support for this statement. In the CPO case, the magistrate found: "[Ryan Harger's] oral testimony failed to support his claim that [Jones] is or has been guilty of menacing by stalking . . . ." January 13, 2012 CPO Judgment Entry, Bankr. Case ECF No. 44. In the Judgment Entry, the magistrate did not state that the testimony

---

[16] *See* Section IV.B.2.

lacked credibility. Perhaps the bankruptcy court assumed that the magistrate reached his conclusion due to a finding that Ryan Harger lacked credibility, but the magistrate's decision simply did not state that. It is possible that the magistrate believed everything that Ryan Harger said and still did not find cause for a protective order.

Therefore, the bankruptcy court abused its discretion in holding that Hoover violated Rule 9011 for believing his clients.

### 5. Evidence Regarding the Objection to Discharge

The Adversary Complaint included a count objecting to Jones' discharge, alleging that Jones failed to disclose an ownership interest in CarMeds. The Panel finds that there is at least some evidence to support Hoover's theory. In Grad's deposition, he called himself an employee of Jones. In Jones' deposition, he seemed to admit that Grad was his employee. Jones' deposition testimony can be interpreted to at least imply that Jones runs the CarMeds business even though his mother is the owner. Further, Jones signed a letter identifying himself as "President" of CarMeds. Finally, Jones stated that his mother gives him money, although he did not say why. These factors lead the Panel to conclude that there is at least a colorable argument that Jones is a de facto owner of CarMeds. Moreover, although the bankruptcy court focused on what it viewed as Hoover's mischaracterization of Jones' deposition testimony, Hoover did present this evidence to the bankruptcy court in response to the Order to Show Cause. Accordingly, the factual finding that Hoover did not present specific evidence in support of this cause of action is clearly erroneous.

### 6. Conclusion Regarding Evidentiary Support

The Fourth Circuit has explained the standard for a determining whether the filing of a complaint is grounds for Rule 9011 sanctions:

> We have aptly observed that "the Rule does not seek to stifle the exuberant spirit of skilled advocacy or to require that a claim be proven before a complaint can be filed.

> The Rule attempts to discourage the needless filing of groundless lawsuits." *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 988 (4th Cir.1987). And we have recognized that "creative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment." *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir.1991) (quoting *Davis v. Carl*, 906 F.2d 533, 536 (11th Cir.1990)).

*Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002).

There are several problems with the bankruptcy court's conclusion that Hoover should have known that the cause of action lacked merit at the time he filed the Motion for Relief and the Adversary Complaint. First, nothing in the record supports a finding that Hoover intended to rely upon video evidence in the State Court Action but then knew that none existed prior to the filing of the Motion for Relief. Second, the bankruptcy court's conclusion that there were no police reports that supported the Hargers' "story" is clearly erroneous. Third, the bankruptcy court did not clearly demonstrate that it was able to distinguish what Hoover knew or should have known regarding his clients' credibility as of the filing of the Motion for Relief and the Adversary Complaint from what was discovered at later hearings. The bankruptcy court stated: "Mr. Hoover's reliance on his clients' self-serving and uncorroborated statement became unreasonable, particularly in light of his client's documented aggressive actions." Sanctions Order at 8. The bankruptcy court did not state when Hoover's reliance became unreasonable, but the implication is that the bankruptcy court was judging the Hargers' credibility based on their testimony at the hearings held during the pendency of the bankruptcy. The bankruptcy court's conclusion failed to recognize that Hoover filed the Motion for Relief and the Adversary Complaint prior to that testimony. Moreover, the statement regarding Mr. Harger's "documented aggressive actions" implies that the bankruptcy court had already determined what it believed as to the outcome of the underlying case.

It is not generally unreasonable for an attorney to file a Motion for Relief to allow a pending lawsuit to proceed. Further, failure to file an adversary proceeding can be malpractice under certain circumstances. Thus, Hoover's actions were not *per se* egregious. Moreover, Hoover cannot be sanctioned based on the bankruptcy court's anticipation of the result of the case. The record in this

case reveals conflicting stories from all the players. It is extremely difficult to tell how a jury would rule. The Panel concludes that the evidence is not so clearly one sided that Hoover is guilty of Rule 9011 violations for bringing a frivolous Motion for Relief and filing a baseless Adversary Complaint. The bankruptcy court does not cite sufficient support in its Sanctions Order for its finding that Hoover was unreasonable in filing the Motion for Relief and the Adversary Complaint. Accordingly, the Panel holds that the bankruptcy court abused its discretion.

## V. CONCLUSION

"An abuse of discretion is defined as a definite and firm conviction that the court below committed a clear error of judgment." *Mayor of Baltimore v. W. Va.* (*In re Eagle-Picher Indus., Inc.*), 285 F.3d 522, 529 (6th Cir. 2002) (internal quotation marks and citation omitted). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Id.* (citations omitted). In this case, the Panel has a firm and definite conviction that the bankruptcy court abused its discretion in sanctioning Hoover because it relied on multiple clearly erroneous factual findings. Moreover, the Panel finds that, having reviewed the record as a whole, no reasonable person could agree with the bankruptcy court's decision. Further, the bankruptcy court also made an error of law when it imposed attorneys' fees as a sanction under Rule 9011 given that the Order to Show Cause was issued *sua sponte*. Accordingly, the bankruptcy court's decision is **REVERSED** and the Sanctions Order is **VACATED**.